## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| MICHAEL KENT, <br><br> Plaintiff, <br><br> vs. <br><br> CANTEL MEDICAL CORP., CHARLES M. DIKER, GEORGE L. FOTIADES, ALAN R. BATKIN, ANN E. BERMAN, MARK N. DIKER, ANTHONY B. EVNIN, LAURA FORESE, RONNIE MYERS, PETER PRONOVOST, and KAREN N. PRANGE, <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Michael Kent ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

## NATURE OF THE ACTION

1. Plaintiff brings this action against Cantel Medical Corp. ("Cantel" or the "Company") and the members of Cantel's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9. By the action, Plaintiff seeks to enjoin the vote on a proposed transaction pursuant to which STERIS plc ("STERIS") through its subsidiaries Solar New US Holding Co, LLC ("US Holdco") and Crystal Merger Sub 1, LLC ("Crystal Merger Sub") will acquire Cantel (the "Proposed Transaction").[1]

---

[1] Non-party STERIS is a public limited company incorporated under the laws of Ireland with its principal executive offices located in Dublin, Ireland. STERIS's common stock trades on the New York Stock Exchange

2. On January 12, 2021, STERIS and Cantel jointly announced their entry into an Agreement and Plan of Merger dated October 15, 2020 (the "Merger Agreement") to sell Cantel to STERIS. The Merger Agreement provides that Cantel stockholders will receive: (a) $16.93 in cash, and (b) 0.33787 ordinary shares of STERIS for each Cantel share they own (the "Merger Consideration"). The value of the Proposed Transaction is approximately $4.6 billion.

3. On April 1, 2021, Cantel filed a Schedule 14A Definitive Proxy Statement (the "Proxy") with the SEC. In recommending that Cantel stockholders vote in favor of the Proposed Transaction, the Proxy omits or misrepresents material information concerning, among other things: (a) Company management's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Centerview Partners LLC ("Centerview"); and (b) the background of the Proposed Transaction. Defendants authorized the issuance of the false and misleading Proxy in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. It is imperative that the material information omitted from the Proxy is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

---

under the ticker symbol "STE." Non-party US Holdco is a Delaware limited liability company and a wholly owned subsidiary of STERIS. Non-party Crystal Merger 2.   Sub is a Delaware corporation and wholly owned subsidiary of US Holdco.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

9. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Cantel.

10. Defendant Cantel is a Delaware corporation, with its principal executive offices located at 150 Clove Road, Little Falls, New Jersey 07424. Cantel's common stock trades on the New York Stock Exchange under the ticker symbol "CMD."

11. Defendant Charles M. Diker ("Charles Diker") has been Chairman of the Board since 1986 and a director of the Company since 1985.

12. Defendant George L. Fotiades ("Fotiades") is Chief Executive Officer ("CEO") of the Company and has been a director since 2008.

13. Defendant Alan R. Batkin ("Batkin") has been a director of the Company since 2004.

14. Defendant Ann E. Berman ("Berman") has been a director of the Company since 2011.

15. Defendant Mark N. Diker ("Mark Diker") has been a director of the Company since 2007.

16. Defendant Anthony B. Evnin ("Evnin") has been a director of the Company since 2017.

17. Defendant Laura Forese ("Forese") has been a director of the Company since 2015.

18. Defendant Ronnie Myers ("Myers") has been a director of the Company since 2016.

19. Defendant Peter Pronovost ("Pronovost") has been a director of the Company since 2017.

20. Defendant Karen N. Prange ("Prange") has been a director of the Company since 2019.

21. Defendants identified in paragraphs 11-20 are referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

22. On January 12, 2021, Cantel and STERIS jointly announced in relevant part:

> DUBLIN, IRELAND and LITTLE FALLS, N.J, Jan. 12, 2021 -- STERIS plc (NYSE: STE) ("STERIS" or the "Company") and Cantel Medical Corp (NYSE: CMD) ("Cantel") today announced that STERIS has signed a definitive agreement to acquire Cantel, through a U.S. subsidiary. Cantel is a global provider of infection prevention products and services primarily to endoscopy and dental Customers. Under the terms of the agreement, STERIS will acquire Cantel in a cash and stock transaction valued at $84.66 per Cantel common share, based on STERIS's closing share price of $200.46 on January 11, 2021. This represents a total equity value of approximately $3.6 billion and a total enterprise value of approximately $4.6 billion, including Cantel's net debt and convertible notes. The agreement has been unanimously approved by the Boards of Directors of both companies.
>
> "We have long appreciated Cantel, which is a natural complement and extension to STERIS's product and service offerings, global reach and Customers," said Walt Rosebrough, President and Chief Executive Officer of STERIS. "Our companies share a similar focus on infection prevention across a range of healthcare Customers. Combined, we will offer a broader set of Customers a more diversified selection of infection prevention and procedural products and services. We welcome the people of Cantel to the STERIS team and firmly believe we will create greater value for our Customers and shareholders together."
>
> Charles M. Diker, Chairman of the Cantel Board of Directors, has separately entered into a voting support agreement along with certain other entities collectively holding approximately 10% of Cantel's outstanding shares. Mr. Diker said, "We are pleased

to reach this agreement with STERIS, which is the culmination of a robust process to achieve an outcome that allows Cantel shareholders to participate in the significant upside of the combined company, while also providing them with immediate cash value. Together with STERIS, we believe the value opportunity is compelling, both today and in a post-COVID world, as the combined company will have the scale, breadth and depth to unlock substantial value that will drive further benefits for Cantel shareholders, Customers and all stakeholders."

"We believe Cantel and STERIS are a perfect strategic fit, and this combination is a natural next step for our company, enabling us to accelerate progress on our Cantel 2.0 initiatives and drive enhanced value for shareholders and the healthcare providers and systems we support," said George Fotiades, CEO of Cantel. "The last year has demonstrated more than ever the importance of innovative and comprehensive infection prevention and control solutions that protect healthcare providers and patients. Together with STERIS, we will be able to provide a more extensive and innovative suite of offerings to our Customers around the world. Importantly, STERIS recognizes that our proven and talented team is the foundation of Cantel's success and we look forward to working collaboratively to bring our two organizations together."

This transaction brings together STERIS's and Cantel's franchises to create a stronger global business serving a broader set of Customers. Cantel's largest business, its Medical portfolio, will strengthen and expand STERIS's Endoscopy offerings, adding a full suite of high-level disinfection consumables, capital equipment and services, as well as additional single-use accessories. Cantel's Dental business extends STERIS into a new Customer segment where there is an increasing focus on infection prevention protocols and processes. Annual revenue for Cantel in its recent fiscal year ended July 31, 2020, was approximately $1 billion, with adjusted EBIT of approximately $134 million.

**Financial Highlights and Transaction Details**

The companies expect to realize annualized pre-tax cost synergies of approximately $110 million by the fourth fiscal year following the close, with approximately 50% achieved in the first two years. Cost synergies are expected to be primarily driven by cost reductions in redundant public company and back-office overhead, commercial integration, product manufacturing, and service operations.

Under the terms of the agreement, Cantel common stockholders will receive approximately $16.93 in cash and 0.33787 of a STERIS ordinary share, or a total of value of approximately $84.66 per Cantel common share based on STERIS's closing share price of $200.46 on January 11, 2021. The transaction is anticipated to close by the end of STERIS's first quarter of fiscal 2022 (ending June 30, 2021), pending customary closing conditions including receipt of regulatory approvals and approval by Cantel stockholders.

STERIS expects to fund the cash portion of the transaction consideration and repay a significant amount of Cantel's existing debt with approximately $2.0 billion of new debt and has obtained fully committed bridge financing.

**The Proxy Contains Material Misstatements or Omissions**

23. Defendants filed a materially incomplete and misleading Proxy with the SEC and disseminated it to Cantel's stockholders. The Proxy misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

24. Specifically, as set forth below, the Proxy fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (a) Company management's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor Centerview; and (b) the background of the Proposed Transaction.

*Material Omissions Concerning Cantel Management's Financial Projections and Centerview's Financial Analyses*

25. The Proxy omits material information concerning the financial projections prepared by Cantel management, including all of the line items underlying the calculation of adjusted EBITDA and unlevered cash flow for both the Cantel Forecast and the STERIS Forecast.

26. The Proxy describes Centerview's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of Centerview's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Cantel's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Centerview's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

27. With respect to Centerview's *Discounted Cash Flow Analysis* of Cantel, the Proxy fails to disclose: (a) Cantel's after-tax unlevered free cash flows for the terminal year; (b) quantification of the estimated terminal values for Cantel; (c) quantification of the inputs and assumptions underlying

the discount rates ranging from 9.25% to 10.00%; and (d) the number of fully diluted outstanding shares of Cantel as of January 8, 2021.

28. With respect to Centerview's *Analyst Price Target Analysis* for Cantel, the Proxy fails to disclose: (a) the individual price targets observed by Centerview in the analysis; and (b) the sources thereof.

29. With respect to Centerview's *Discounted Cash Flow Analysis* of STERIS, the Proxy fails to disclose: (a) STERIS' after-tax unlevered free cash flows for the terminal year; (b) quantification of the estimated terminal values for STERIS; (c) quantification of the inputs and assumptions underlying the discount rates ranging from 7.50% to 8.25%; and (d) the number of fully diluted outstanding shares of STERIS as of January 8, 2021.

30. With respect to Centerview's *Analyst Price Target Analysis* for STERIS, the Proxy fails to disclose: (a) the individual price targets observed by Centerview in the analysis; and (b) the sources thereof.

31. Without such undisclosed information, Cantel stockholders cannot evaluate for themselves whether the financial analyses performed by Centerview were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Centerview's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction or seek appraisal.

32. The omission of this information renders the statements in the "Certain Unaudited prospective Financial Information Prepared by Cantel" and "Opinion of Cantel's Financial Advisor" sections of the Proxy false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background of the Proposed Transaction***

33. The Proxy fails to disclose material information concerning the background of the Proposed Transaction.

34. The Proxy sets forth that, "[b]etween October 19, 2020 and November 14, 2020, Cantel entered into confidentiality agreements with a total of five prospective buyers, including three of the Strategic Bidders (including a confidentiality agreement entered with STERIS on October 26, 2020) and both Financial Bidders." *Id.* at 52. Critically, the Proxy fails to disclose whether the confidentiality agreements include "don't ask, don't waive" ("DADW") standstill provisions that are still in effect and presently precluding these potential buyers from making a topping bid for the Company.

35. The failure to disclose the existence of DADW provisions creates the false impression that a potential bidder who entered into a confidentiality agreement could make a superior proposal for Cantel. If the potential acquirer's confidentiality agreement contains a DADW provision, then that potential bidder can only make a superior proposal by (a) breaching the confidentiality agreement—since in order to make the superior proposal, it would have to ask for a waiver, either directly or indirectly; or by (b) being released from the agreement, which if action has been done, is omitted from the Proxy.

36. The disclosure of the terms of the confidentiality agreements is crucial to Cantel stockholders being fully informed of whether their fiduciaries have put in place restrictive devices to foreclose a topping bid for the Company.

37. The omission of this information renders the statements in the "Background on the Mergers" section of the Proxy false and/or materially misleading in contravention of the Exchange Act.

38. The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy. Absent

disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and Cantel's public stockholders will be unable to make a sufficiently informed decision whether to vote in favor of the Proposed Transaction or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

39. Plaintiff repeats all previous allegations as if set forth in full.

40. During the relevant period, defendants disseminated the false and misleading Proxy specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

41. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy. The Proxy was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about Company management's financial projections, the financial analyses performed by the Company's financial advisor, Centerview, and the background of the Proposed Transaction. The defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

42. The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction or seek to exercise their appraisal rights.

43. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

44. Because of the false and misleading statements in the Proxy, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

45. Plaintiff repeats all previous allegations as if set forth in full.

46. The Individual Defendants acted as controlling persons of Cantel within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Cantel, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

47. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

48. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy.

49. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

50. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

51. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Cantel's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Cantel, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Cantel stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.    Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: April 12, 2021

**LONG LAW, LLC**

By: */s/ Brian D. Long*
Brian D. Long (#4347)
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Telephone: (302) 729-9100
Email: BDLong@longlawde.com

*Attorneys for Plaintiff*